Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. I accept the United States in this honorable court. Good morning. Thank you to everyone for joining us and for being patient as we make sure that we have our live stream ready. I know that Judge Karns and Judge Choflat and I are pleased to be here virtually with you and so we'll get started on our first case. We have United States v. Colston and I believe Ms. Rogers will be starting us off. Ms. Rogers. Thank you. Good morning and may it please the court. I'm Kristen Rogers from the Federal Defender's Office and I represent Ms. Colston. Ms. Colston's convictions for cocaine conspiracy and distribution should be reversed because the government failed to demonstrate sufficient evidence at trial that she actually knew or took action to avoid learning that the package she was hired to find and pick up at the contained cocaine. Now the government has correctly conceded under this court's Aki and Narag precedents that they had to prove Ms. Colston's specific knowledge that the package contained cocaine as opposed to some other drug or contraband. The indictment in this case, in the indictment in this case, the generic drug element was modified by the phrase to which, which this court has previously held, narrows the crime to a subset of the statutory drug crime. Our second argument in the case is that the jury could not reasonably logically and legally infer from the evidence that the that the government presented at trial that Ms. Colston knew the package she picked up contained cocaine. Notably, the jury deadlocked in this case and had to be Allen charged. The government's key cooperating witness, a guy named Mario Reyes, said at trial that Ms. Colston told him to tell the truth so that she could go home. He did not know that Colston, he did not know Ms. Colston to be involved in his and Poncho's drug business. He said Poncho did not trust Ms. Colston to pick up the package she was hired to pick up. He heard, he overheard Poncho and Ms. Colston discussing the package before their trip to Mobile, and they always referred to it as the package, not cocaine. And he testified that Poncho and he had used dupes in their drug business in the past. Now for Ms. Colston, she at all times used her real name in her interactions with the post office. She was actually translating for Poncho when they were in the post office together. She never admitted knowing that the package contained cocaine, or even that the package was suspicious to her. She never mentioned cocaine in any of her communications with Poncho or her boyfriend Armando who worked as an auto mechanic for Poncho. And she was not previously involved in cocaine trafficking. And the government has relied on the so called prudent smuggler doctrine in this case to try to fill the evidentiary void on the issue of knowledge. But the prudent smuggler doctrine does not apply in this case, precisely because Reyes testified that Poncho did not trust Ms. Colston to pick up this package. Also, there was no reason for Ms. Colston to know in this case what was inside the package, given that she had only been hired to pick it up and carry it outside the post office and hand it off to someone else. It was reasonable in this case for Poncho to use a dupe because he needed someone who spoke fluent English to handle the interactions with the post office for him. And he ensured that Ms. Colston would never be alone with this package. He either personally accompanied her to the post offices in Pensacola or he sent his trusted confidant Mario Reyes with her. Now this court has reversed convictions in the past that had more evidence of entrustment than was present in this case. Some examples that I cited were the Martinez case, the Charles case, the Reed case, the Hernandez case. I also cited a case called Torres out of the second circuit because the fact pattern in that case was very similar to this case. It involved a sealed UPS package and a controlled delivery. And the government has relied on two cases primarily that are easily distinguished from this case. The Cuilca Carpio case and the Cruz Valdez case. Those cases are distinguishable because in contrast to the defendants in those cases, Ms. Colston was never alone with this package. So she had no obvious opportunity to learn what was inside it. In fact, she never saw what was inside this package until trial. Our second issue in the case involves the court's decision to give the jury a deliberate ignorance or willful blindness instruction. And the government presented no evidence that Ms. Colston had avoided learning or had an obvious opportunity to learn that there was cocaine inside Poncho's package. As a result, there was no factual basis for giving the deliberate ignorance instruction in this case. And there was a great risk in this circumstantial evidence case that the instruction confused the jury and led them to convict Ms. Colston because she should have known what was following the instructions that they're given. We do have to assume that they follow the instructions that they're given, but there must be evidence to support the jury's finding. And in this case, there was simply none. It's a two-part standard. First, the defendant must have a suspicion, a subjective suspicion that a fact exists. And second, the defendant must take deliberate actions or contrive to avoid learning that fact. A lack of curiosity is not enough. And that's all that was present in this case. The government's evidence. What about the holding in Stone? Even if we accept Stone's characterization of the evidence and assume that there was no evidence of deliberate ignorance, reversal is not required because any error in giving the instructions is harmless beyond a reasonable doubt. Right. The assumption underlying Stone, though, is that there is sufficient evidence to sustain the conviction on the alternative theory of actual knowledge. Well, of course there has to be. If there's no evidence to support deliberate instruction, deliberate ignorance, and if there's insufficient evidence to support intent, then obviously you have insufficient evidence because neither theory fits. The question I thought you were addressing was you couldn't use a deliberate ignorance instruction even if there was some evidence of deliberate ignorance because the evidence indicated intent. That's the usual situation. You give deliberate ignorance and the defendant argues you shouldn't have given deliberate ignorance because all the evidence, if you believe it, and if it supports anything, supports knowledge and intent. That's not your argument. Your argument is nothing supports anything, right? My argument is the government presented no evidence that Ms. Colston took in action to avoid learning what was inside that package, and that's what is required to support a deliberate ignorance instruction. And our argument is also that it's not harmless because there was insufficient evidence to support the alternative theory of actual knowledge. Well, yes, I understand. That's not, I read your argument a bit differently, but I understand what you're saying. There's insufficient evidence on either theory. Correct. That's your position. Okay. But in the government, the evidence that the government has cited in support of the court giving the deliberate ignorance instruction did not support an inference that she took some action to avoid learning what was inside that package. If you take what they have argued as true, then that evidence only supports a theory of either actual knowledge or no knowledge. So there was no factual basis to give the instruction. If I could, I would like to draw the court's attention to what the government's attorney said in closing arguments in this case, and this is in their, not the rebuttal argument, but their opening closing argument. They said, now two ways for the United States to prove defendant's knowledge. The first way is through what's called a deliberate ignorance or willful blindness charge. It basically means you can't choose to know something that you absolutely should know. And the best way I know to explain it is by example. So say you're in New York, you're walking down the sidewalk and there's some guy on the corner in the shade and he's flashing something shiny to you and he gets your attention and he tells you to come over and look around to make sure nobody sees you and then he flashes you a beautiful gold Rolex watch and he says I'll sell you this Rolex for five dollars. Now this ain't a Rolex in a box and he doesn't have a receipt. So if you decide that you're going to buy that Rolex from him, you know two things. You know because of your life experiences and because of the circumstances that that Rolex has to be stolen or counterfeit. And if you buy it, you can't pretend that you didn't know these things when you absolutely should have known them. Well, there are multiple things wrong with what the government said in closing argument. First, they twice used the civil standard should have known. They told the jury two times that they could convict my client because she should have known what was in that box. And secondly, their Rolex example. The problem with that is a person, a buyer of a Rolex watch under those circumstances would never be charged with a conspiracy to distribute, a conspiracy to sell or manufacture counterfeit or stolen Rolexes. They'd be charged with a much less serious crime like receiving stolen property precisely because it's impossible to get the defendant's knowledge on that fact pattern. I assume there was no objection to that argument? There wasn't. And I didn't raise it as a separate issue for that reason. But I do believe it's strong evidence that the jury in this case was likely confused by the deliberate ignorance instruction because there was no evidence to support it. And because they were wrongly told by the government's That fits into the issues you did raise. Either there was sufficient evidence to support the deliberate ignorance instruction or there wasn't. The fact that the prosecution made an argument they shouldn't have made in closing argument doesn't change the calculus of what's sufficient evidence. Well, I don't think it's fair. Let me return to Stone. In Stone, we are in agreement that the jury follows instructions. We have to make that assumption. But I don't think it's fair to assume that the jury is going to ignore the instruction every time it's wrongly given in a case without any evidence to support it. And I think the prosecutor's closing argument goes to that point. You may think it's not fair, but that's what our binding precedent in Stone says. But we can't reasonably expect a jury to understand the deliberate ignorance instruction when the lawyers in the case obviously don't understand the deliberate ignorance instruction. So I think it undermines, and I know we can't reverse Stone, but I do think it undermines an assumption that was made in Stone. I see my time is up, so. Thank you. You've reserved your time. Mr. McDonald for the United States. Good morning. My name is, may it please the court, my name is Oliver McDonald for the United States. On the date of her arrest, the defendant in this case entered the post office in Mobile alone. She presented the employee with her own phone, which had a tracking number for the package that had contained $200,000 cocaine. She then accepted that package and walked out of the post office alone. But that was only the beginning of the evidence of her guilty knowledge. Shortly after her arrest, she gave a statement to the postal inspector. She claimed that she had driven to Mobile that day with a man named Carlos Lopez, that Lopez had paid her to translate for him, and that no one else was involved. Of course, the jury came to learn that the man who had driven with her that day was not named Carlos Lopez. That was Reyes who testified at trial. He testified that he didn't have, he didn't have Colston translate for her that day. He didn't pay Colston for any service that day. Reyes traveled to Mobile that day to pick up a package full of cocaine. The jury also learned that contrary to what Colston claimed immediately after her arrest, there was someone else involved. That was Poncho, with whom she had had extensive contact in the preceding days, both via text message in which they discussed picking up the package, going separately to a post office in Myrtle Grove, where Colston appeared anxious about picking up the package, and the morning of her arrest when Colston, Reyes, and Poncho met together to discuss picking up the package. And that evidence was enough for the jury to infer that Colston was not a mere instrument of the conspiracy who was translating and just walking into the post office to pick up the package. She was a knowing and intentional member of it because otherwise she had no reason to attempt to cover it up. Do you agree that the government had to show that she specifically knew that there was cocaine as opposed to generally some sort of contraband? Our brief didn't specifically address that issue, but the evidence in this case would satisfy that standard based in part on Reyes's testimony. Reyes saying he did have knowledge that he was there to pick up cocaine. He had met with Colston that morning. He testified about how he had been involved in Poncho's cocaine-related activities in the past. And so based on all that testimony, the jury could have inferred that it was cocaine. So, but let me be clear. Do you think that you had to prove that she knew it was cocaine? The indictment charged her with cocaine possession. Yes, your honor. Yes. So, and your best evidence for her knowledge is the fact that Reyes knew? I think the best evidence is the entrustment given to Colston. But wouldn't there be entrustment given to Colston of the same nature if it had been heroin or meth or fentanyl? I suppose your honor, but the package was addressed to an address associated with Poncho. And Poncho had previously been involved in cocaine distribution. So that was all evidence that the jury could have used to infer that Colston also was aware of Poncho's cocaine-related activity and that the reason she was there that morning was to pick up cocaine. Go ahead. Here's what I don't understand. How does the requirement of knowledge of a specific drug fit in with the deliberate ignorance instruction? If you've got to prove that the defendant knew it was cocaine, isn't that inconsistent with ignorance deliberate or otherwise? I don't think so, your honor, because since the deliberate ignorance is the equivalent of knowledge. So as the appellant pointed out, to give the instruction, the facts have to support an inference that the defendant was aware of a high probability of the fact that it was cocaine. And also that she contrived to avoid learning that fact. So wasn't the boyfriend, he was a 76-year-old man, a cocaine user? Or am I mistaken about that? I'm sorry, your honor. I didn't quite hear your question. Colston's boyfriend. Colston's boyfriend, Armando. Yeah. My understanding is that he was a cocaine user. Or am I wrong? Your honor, I don't recall that evidence. Okay. But there was a discussion with Colston and Reyes and her about cocaine. That day, was there not? There was a meeting the morning of her arrest between Colston, Reyes, and Poncho. Yeah. And the testimony from Reyes was that the three discussed picking up the package. And was cocaine mentioned? Cocaine was not specifically mentioned in Reyes's testimony. Do you have any evidence that someone ever specifically told her that it was cocaine? I think the answer is no, but... The answer is no. Okay. So the problem I'm having is it seems that there's, to me at least, I speak only for myself, pretty clear evidence that she knew that something fishy was involved in the package. But that's a lot different than necessarily knowing or deliberately avoiding knowledge that the package contained cocaine. Could these, could Poncho and Reyes have said, we need you to pick up this package of illegal drugs. And that would be, if that's her knowledge, then according to the standard we've got, then the crime wasn't proven, correct? If that was the only evidence... If that was the only knowledge, yeah. I would agree. But for the reasons I stated, such as Poncho's prior involvement in cocaine distribution, and Reyes's prior participation in that, and Reyes's testimony that he at least knew after his meeting with Poncho on his way to Mobile, that their purpose was to retrieve cocaine, not some other controlled substance. Viewing all of that evidence in the light most favorable to the jury's verdict, then it would have been fair, if we're in the conscious avoidance or conscious indifference world, that would be enough on that theory. For the other reasons I've stated, the evidence was sufficient to show she was actually aware of the cocaine. Is there any inference that could be reasonably drawn that she knew that he had been, that Poncho had been dealing in cocaine in the past? Your Honor, the evidence... It's a circumstantial evidence case. Yes, Your Honor, based on her... He obviously was trafficked with cocaine. Yes, Your Honor. Based on her prior contacts... Armando was working for him from time to time, and so the question is whether there was enough contact between her and Poncho to draw an inference that she realized what he was doing. That's right, Your Honor. Armando, Colston's boyfriend, had worked for Poncho from time to time. Colston had had extensive text message contact with Poncho, and had visited at least one other post office with Poncho for the purpose of receiving the same package. So that extensive contact leading up to her arrest in Mobile when she was attempting to retrieve the package would be sufficient for the jury to infer that she knew through Poncho's cocaine-related activity that the controlled substance in question was cocaine. Is the theory that she knew of that because of Armando's knowledge of that? And we can infer that she and her... Can discuss that? I don't think there was evidence that Armando knew of that. That's the boyfriend who had worked for Poncho. The man who drove to Mobile with him was Reyes, and Reyes testified that he knew that it was cocaine. I think viewing just that one piece of evidence that Reyes, who drove in the car with her to get the cocaine, knew it was cocaine, that's enough to make a fair inference. But as I said, there were also the extensive contacts with Poncho, who had a history of importing in cocaine in a similar manner, and her prior attempts to retrieve the package with Poncho. What was the basis for Poncho's distrust of her? Other than Reyes' statements to that effect. Your Honor, I'm not aware of any evidence in the record that would have shed any light on the court's question. But I would point out that I'm not sure the evidence supported that he necessarily did distrust her, other than Reyes' assertion to that effect. That's because when she went into the post office to pick up the package, she had the tracking number, which authorized her to pick up the package on her own phone. And just on that fact, the fact that she was exercising agency by arranging for the delivery by calling the post office in the days preceding, and then going herself into the post office and talking to the employee, and then had the authority to pick up the package on herself, the jury could have fairly inferred that at any point, with or without Poncho, with or without Reyes, she could have chosen to act on her own to pick up the package. Now, she chose- But Reyes was with her in the car, right? That's correct. Is the theory that she theoretically could have run away in the parking lot after she picked up the package? Well, I think that's slightly more fanciful than it would need to be. She could have gone, for example, the day before. When she talked to the postal inspector over the phone to arrange for the pickup, she didn't have to say, sure, tomorrow morning's great. She could have arranged for another time. On that phone call, she didn't check with someone else to say, is this time good? Should we choose another time? She could have kept the time secret and gone herself, gone on another day. And that's a fair inference that the jury could have made to show that, in fact, Poncho did entrust her with that information that authorized her to pick up the package and entrusted her to arrange for the logistics of picking it up. So even though she chose to go with Poncho to the Florida Post Office and chose to be accompanied by Reyes to the Mobile Post Office, that doesn't necessarily mean she lacked the authority to do it unilaterally. What's the evidence that she chose that rather than that they chose that, if we're discussing in terms of choices? I think the best evidence was the postal inspector's testimony about the phone call. When she called, excuse me, he called her back about picking up the package to see if she was interested in driving over to Mobile from the Pensacola area. He offered the very next day. She immediately agreed. She didn't need to check with someone else in order to set that time. Just to touch on the other issues on appeal. This court does not need to reach the merits if it finds that the evidence was sufficient to show that Colston was actually aware of the cocaine inside of the package and can do so without resorting to relying on the 404B evidence. On either issue, any error would be harmless. But for the reasons stated in our brief, it could also affirm on the merits. Would it be enough to satisfy deliberate indifference if, I'm getting an echo. Would it be enough to satisfy deliberate indifference if you showed that she knew that there was something, probably the package was contraband, but she didn't inquire about what specifically was contained in the package? No, Your Honor. To the extent that the jury was required to find that the controlled substance in the package was cocaine, the instruction should be given if the evidence supported the inference that she was aware of a high probability of it being cocaine, not just any controlled substance. But again, that instruction should be given where the evidence supports that inference. I also want to speak to counsel's argument concerning no evidence of action to avoid learning. But the evidence was replete with evidence that they were avoiding talking about cocaine. Reyes said when they met that morning of her arrest, they talked about the package, not the cocaine, but the package to avoid mentioning the word cocaine. In her text messages with Poncho, they discussed the package, not cocaine, but the package. Those were actions taken to avoid learning that the controlled substance was cocaine. And that was properly given because before the jury deliberated, the jury might have decided that she wasn't specifically aware that this particular package was the one containing cocaine, despite having evidence to show that she knew there was a high likelihood of that fact. Of course, on appeal, the standard of review is viewing all of that evidence in the light most favorable to the United States,  of the contents of the package. And just since I have one minute, I do want to note that the issue about the closing argument was not raised in the brief. So any standalone issue based on that portion of the closing argument was waived. And unless the court had any other questions, I'd ask that it affirm and I'll rest on my brief. All right, thank you. Ms. Rogers, you've got three minutes. Thank you. Just to address one of the government's last points, the government says, this is my understanding of their argument, that the fact that Ms. Colston and Poncho never discussed criminal activity in their text messages is somehow evidence of criminal activity. So the absence of criminal activities is evidence of criminal activity. That's not logical. Also, I'd just like to point out that the government relies for Ms. Colston's knowledge on Poncho's knowledge or Reyes's knowledge. They're saying you can impute their knowledge to Ms. Colston, but that's not the standard. There was no evidence in this case that Ms. Colston was aware that Poncho sold cocaine in the past. Absolutely no evidence of that fact. There was no evidence at trial that Ms. Colston's boyfriend Armando, the auto mechanic, was a user of cocaine or was aware that Poncho sold cocaine. There was no evidence of that fact in this record. Now, the fact that Ms. Colston had power to pick up the package on her own doesn't mean that she knew what was inside the package. She never disputed that she was given the tracking number so that she could pick up the package at the post office, but that still doesn't prove that she knew what was inside it. She never saw what was inside it. Now, the government says that she somehow could have made arrangements to pick up the package on her own the day before she and Reyes drove to Mobile, but the postal inspector who handled the controlled delivery in this case called her at 6.35 p.m. the night before to make arrangements for her to come to Mobile. The post office was closed at 6.35 p.m. She had absolutely no means to pick up that package prior to the day that she traveled to Mobile with Mr. Reyes. The text messages between Ms. Colston and Poncho establish that they were constantly communicating about the details of her pickup of this package. She was taking direction from him on the most minute details. He says to her, like, you know, are you going? When are we going to meet? You know, they're very short, specific questions. He knew exactly where she was at all times and was monitoring her. So she had no opportunity to go get this package on her own. Ms. Rogers, the postal inspector calling her at 6.35 p.m. when she was entrusted with the tracking number and was alone, the defendant, I'm sorry, the co-defendants of conspirators didn't know when the postal inspector was going to call. So I think the relevance of his argument is under the prudent smuggler doctrine, they must have trusted her because for all they knew, the postal inspector might have called earlier and she might have been able to leave then go with the tracking number and get the package herself. That was a force of his argument, which I don't think is answered by saying, yeah, but the postal inspector waited until it was too late. Um, that may be so Judge Carnes, but I still don't think it establishes that she knew what was inside that box. I'm over my time now. So, um, I'm probably shouldn't say anymore. Okay. Um, it's not sufficient for the government to prove that she intended to engage in some unspecified illegal activity or that she should have known that her contact conduct was illegal or that she knew what was inside that box. She has to, the prior cases from the circuit hold that, that, um, a conviction for an offense requiring knowledge of a specific object can't survive on some brief entrustment such as what occurred in this case. And so I rest on that point. Thank you. Thank you.